McDonel v. The State.

No. 11,190.

McDONEL v. THE STATE.

PRACTICE.—*Production of Articles Used as Evidence.*—A motion, based on matters not within judicial knowledge, for the production of certain named articles in open court for inspection, should be supported by affidavit showing the facts and some reason for invoking the action of the court.

JUROR.—*Competency of.*—*Alien.*—*Statute Construed.*—The statute, R. S. 1881, section 1793, which makes alienage a cause of challenge of a juror, requires only that he be a citizen of this State, and not that he shall be a citizen of the United States.

WITNESS.—*Impeachment of.*—*Evidence.*—Where a witness testifies in his examination in chief that the reputation of a party is good with respect to some quality or disposition, it is competent to show by cross-examination that he has heard reports at variance with the reputation he has given the party. *Oliver* v. *Pate*, 43 Ind. 132, distinguished.

CRIMINAL LAW.—*Evidence.*—A denial by one accused of crime, of a fact which tends to show guilt, is itself a criminating circumstance, and proper evidence against him.

SAME.—*Inspection of Weapons by Juror.*—It is entirely proper, as part of the *res gestæ*, to allow the jury to inspect a weapon by which an offence is alleged to have been committed.

McDonel *v.* The State.

PRACTICE.— *Witness.— Misconduct of Counsel.*— Persistence of counsel in putting proper questions to a witness, which the court erroneously refused to allow, is not subject to criticism in the Supreme Court.

From the Criminal Court of Allen County.

*S. E. Sinclair, H. C. Hanna, H. Colerick* and *W. S. Oppenheim,* for appellant.

*F. T. Hord,* Attorney General, *C. M. Dawson,* Prosecuting Attorney, and *W. G. Colerick,* for the State.

HAMMOND, J.—Indictment charging the appellant with murder in the first degree. A trial by jury resulted in conviction, fixing the death penalty as the punishment. Over appellant's motion for a new trial, and exception to the ruling, judgment was pronounced upon the verdict.

The record properly presents many questions as to the rulings of the trial court, but, regarding all others as waived, we will consider such only as appellant's counsel have discussed in this court:

1. The indictment was returned April 7th, 1883, and the trial began on the 7th of the following month. Three days after the return of the indictment the appellant moved the court in writing for an order to require the prosecuting attorney to produce in open court, for the inspection and examination of appellant's counsel, certain named articles, alleged in the motion to be in the possession of the prosecuting attorney, and to have been introduced in evidence by the State at the examination before the justice of the peace; and asking, upon the production of the same, that they should be placed in the custody of an officer of the court, for the inspection of either party in the presence of such officer. The motion was overruled. The ruling was correct. No affidavit accompanied the motion. The court could not take judicial notice that the articles referred to were in the custody of the State's attorney, nor that they had been introduced in evidence before the justice at the preliminary examination, nor that

their production for the inspection of appellant's counsel was necessary or material for his defence. Analogous motions in civil cases are expressly required by statute to be supported by affidavit. Section 480, R. S. 1881. Good practice in all cases requires that where a motion is founded upon matters not within the judicial knowledge of the court, there should be an affidavit as to the existence of the facts upon which it is based, showing their materiality and the necessity for invoking the aid of the court with reference thereto.

2. In empanelling the jury to try the case, one Henry Bushing was called as a juror. He stated under oath, as to his competency, that he was a voter, and a freeholder and householder, in the city of Fort Wayne; that he had not formed or expressed any opinion as to the guilt or innocence of the accused; that he was born in Germany; was thirty-three years of age; that his parents lived in Germany; that he had resided in the United States and in this State seventeen years; that he had, at the clerk's office, in the court-house, in Fort Wayne, six years after coming to this country, taken out his first, but had never taken out his second, naturalization papers; and that he had been voting for the past ten years. The appellant objected to the juror, on the ground that he was an alien, but his objection was overruled by the court, and to this ruling he excepted. On his peremptory challenge, Bushing was then excused from the jury, and another was called and accepted in his place. The peremptory challenge which excused Bushing was the thirteenth and last peremptory challenge exercised by the appellant. It is claimed that the challenge for cause should have been allowed, and that its refusal by the court was error, for which appellant was entitled to a new trial.

Section 1793, R. S. 1881, provides that " The following, and no other, shall be good causes for challenge to any person called as a juror in any criminal trial : *    *    *    *

"*Ninth.* That he is an alien."

The evidence of Bushing on his *voire dire* showed that al-

though he was not a citizen of the United States, he was a citizen and a voter of the State, under section 2 of art. 2 (section 84, R. S. 1881) of our State Constitution. One may be a citizen of a State and yet not a citizen of the United States. *Thomasson* v. *State*, 15 Ind. 449; *Cory* v. *Carter*, 48 Ind. 327 (17 Am. R. 738); *McCarthy* v. *Froelke*, 63 Ind. 507; *In Re Wehlitz*, 16 Wis. 443.

It is proper, therefore, to consider whether the ninth cause for challenge of a person, called as a juror, in section 1793, *supra*, relates to one who is not a citizen of the United States, or merely to one who is not a citizen of this State. It must be conceded that the word "alien" almost uniformly applies to one born beyond the jurisdiction of the United States, and not naturalized comformably to the laws of the United States. It is not improbable, however, that this general use of the word obtains from the fact that in most of the States of the Union persons who are not citizens of the United States are not admitted to State citizenship. In this State, however, a declaration of intention to become citizens of the United States, with the requisite residence in this State, not only confers upon male persons of foreign birth the elective franchise, but renders them eligible to any office in the State, except Governor, Lieutenant Governor, Senator and Representative in the Legislature. Sections 103 and 133, R. S. 1881; *McCarthy* v. *Froelke*, *supra*.

Mr. Proffatt, in his treatise on trial by jury, section 116, says: "It is necessary that a juror should be a citizen of the State, a qualified elector, and that he has not forfeited any of his political rights by a conviction for crime. Alienage, therefore, is good ground for the exclusion of a person from a jury." The word "alienage" seems to be used by the author with reference to one who is not a citizen of the State. By section 1386, R. S. 1881, the jury commissioners, in selecting jurors, are directed to take their names from those on the tax-duplicate, who are legal voters and citizens of the United States; "and they shall not select the name of any

person who is not a voter of the county, or who is not either a freeholder or householder" of the county. The wording of the section warrants the construction that the part relating to citizens of the United States is simply directory, while that respecting legal voters and householders or freeholders is mandatory. Section 1393, R. S. 1881, defining the qualifications of a juror, is as follows: "To be qualified as a juror, a person must be a resident voter of the county and a freeholder or householder." It will be seen that the definition does not require the juror to be a citizen of the United States. We are of the opinion that the ninth cause for challenge in section 1793, *supra*, has reference to the qualification of a juror as defined in section 1393, *supra*, or, in other words, that the term "alien," as used in the statute, relates to one who is not a citizen, nor a voter of the State.

This construction is in harmony with the spirit and policy of our Constitution and laws respecting citizens of the State of foreign birth, who may not be citizens of the United States. For it would seem incompatible with the spirit of our laws to exclude one from the jury-box who was eligible to act as jury commissioner in selecting jurors; or as sheriff in empanelling a jury; or as judge to preside at the trial. The construction we give the statute avoids this inconsistency, and we think should be adopted. We must, therefore, hold that there was no error in refusing the appellant's challenge to Bushing on the ground of alienage.

3. There was evidence at the trial tending to show that the motive for the homicide was to obtain money belonging to the deceased.

Louise Cavalier, a witness for appellant, testified that at the time of the commission of the crime she was acquainted with his general reputation for humanity and honesty in the neighborhood where he resided, and that such reputation was good. She was cross-examined by counsel for the State, and asked a series of questions as to whether she had heard certain rumors, specifically named, which, had she admitted hearing

them, would have materially weakened the force of her evidence in chief as to appellant's reputation. To each of the questions thus asked her on cross-examination the court sustained the appellant's objection; but he complained and objected to the persistence of counsel for the State in asking what he claims were improper questions. It is urged that the course of counsel for the State in this respect prejudiced the rights of the accused by making on the minds of the jury the impression that he had been guilty of the offences about the rumors of which the questions were asked. Had the questions, numerous as they were, been wholly irrelevant, we are not prepared to say that the conduct of the State's counsel would not have been open to criticism; but we are clearly of the opinion that the questions asked the witness on cross-examination were proper, and that the court erred against the State in sustaining appellant's objections thereto. The questions were relevant, not to prove that the appellant had been guilty of the offences referred to in the questions, but to elicit testimony which might affect the credibility of the witness's evidence in chief as to the appellant's reputation for humanity and honesty. One's reputation consists in the general estimation in which he is held by his neighbors. This is to be ascertained from what they generally say of him. When a witness testifies that such reputation is good with respect to some quality or disposition, it is competent to show by his cross-examination that he has heard reports at variance with the reputation he has given the party; and if his admissions of hearing such adverse rumors go to the extent of showing that they were general in the neighborhood where the party resided, the effect of the witness's testimony in chief would be destroyed. Wills Cir. Ev. 165–6. *Oliver* v. *Pate*, 43 Ind. 132, cited by appellant's counsel, is not in conflict with this view. There the questions asked the witnesses on cross-examination were as to what they had heard the neighbors say as to the honesty of a party whose reputation for truth and veracity they had testified was good. The questions asked on

cross-examination in that case were properly held to be impertinent to the matter testified to by the witnesses in their examination in chief.

4. The State introduced as a witness one Arthur Dodge. He testified that he went to the jail where appellant was confined, with a certain gun and pawn ticket, and asked the appellant in the presence of one Erastus Shuman, if he knew the gun, and if he had signed the ticket, and that the appellant denied knowing the gun, and also denied signing the ticket. Witness testified that he then asked Shuman, in appellant's presence, if appellant signed that ticket; that Shuman replied that he did; and that appellant then said that he did not sign it, and also said that he had never seen the gun or the ticket.

The gun was identified by other witnesses as having been the property of the deceased at the time of the homicide, which occurred on March 23d, 1883. Shuman testified that he was a pawnbroker in Fort Wayne; that on March 28th, 1883, which was before the discovery of the crime, the appellant brought this gun to the witness's place of business and pawned it to him for $10, signing two pawn tickets, one of which the witness retained, giving the other to the appellant. Other evidence showed that the pawn ticket, which Shuman identified as the one he gave appellant, was found concealed at a place where the appellant had been seen to go. The conversation at the jail about a pawn ticket related to the one given by Shuman to the appellant. It is earnestly insisted that the conversation testified to by Dodge was improperly admitted. We are of a contrary opinion. If the jury believed from the evidence that the gun belonged to the deceased, and that it was pawned by the appellant as Sherman testified, the appellant's denial of ever having seen the gun, or of having signed the pawn ticket, was a circumstance proper for the jury to consider, with other circumstances, in determining his guilt. Where one charged with a crime denies, or gives a false account of a circumstance or suspicious

fact, tending to connect him with the offence, such denial may be regarded as a criminal circumstance proper to go to the jury. Whart. Crim. Ev., section 761. There was no error in admitting the testimony objected to.

5. The evidence showed quite conclusively that the mortal wound was inflicted with a hatchet, identified by the evidence as found in the cabin where the body of the deceased was discovered several days after his death. After it was thus identified at the trial, one of the counsel for the State said : " We desire that the jury inspect this hatchet," at the same time placing it in the hands of one of the jurors. It was immediately taken from the juror by order of the court. The conduct of counsel for the State, in this matter, was objected to by appellant's counsel. Thereupon the court said to the jury : " I do not think that these articles can be given to the jury. The fact that the juror had placed in his hand what was alleged to be the hatchet with which the fatal blow was given, you, Gentlemen of the Jury, will not consider that in evidence, or as any part of the evidence, and you are not to take into consideration the marks, if any, that you saw upon it, nor consider that as evidence when you retire to make up your verdict in this case, and you must not speak of it, or refer to it in the jury room, as it is not evidence."

Had the conduct of counsel, in handing the hatchet to the juror, been as flagrant a breach of propriety as it is claimed to have been, we would still, in view of the court's prompt and broad admonition to the jury, think such conduct was rendered harmless in its effect. Jurors are presumed to be men of conscience and intelligence, honestly striving to do impartial justice. Where, in the course of a trial, there occurs an irregularity, such as that under consideration is claimed to have been, but is promptly and fully disapproved by the court in an instruction to the jury, it can not be presumed that the jury will disregard the court's caution and allow the misconduct to bias their minds. Our opinion is, however, that the State had a right to have the hatchet inspected

by the jury. It is well settled that all instruments by which an offence is alleged to have been committed may be inspected by the jury. All clothing of the parties concerned and all materials in any way forming part of the *res gestœ*, from which inferences of guilt or innocence may be drawn, are proper to be produced at the trial for the inspection of the jury. *Com.* v. *Brown*, 121 Mass. 69; *People* v. *Gonzalez*, 35 N. Y. 49; *Gardiner* v. *People*, 6 Parker C. C. 155; *State* v. *Mordecai*, 68 N. C. 207; *State* v. *Graham*, 74 N. C. 646.

There was no error respecting the inspection of the hatchet by the jury, of which the appellant can complain.

6. The appellant's counsel insist that the seventeenth instruction given by the court on its own motion does not state the law correctly upon the subject of malice. The instruction is as follows:

"17. Malice, within the meaning of the law, includes not only hatred and revenge, but every other unlawful and unjustifiable act. Malice is not confined to ill-will towards an individual, but it is intended to denote an action flowing from any wicked and corrupt motive; a thing done with a wicked mind, and attended with such circumstances as plainly indicate a heart regardless of social duty and fully bent on mischief."

The fault of the above charge, if any, was rather in favor of the appellant. Its definition of malice seems to exclude its existence unless there be hatred and revenge connected with the doing of every unlawful and unjustifiable act. It is not open to the objection urged by appellant's counsel, that it informed the jury that the doing of any unlawful or unjustifiable act would, of itself, denote malice. The instructions, taken altogether, were quite as favorable to the appellant as he could have expected.

7. Finally, it is urged that the verdict of the jury is not sustained by the evidence. We have examined the evidence carefully. It is circumstantial, but the circumstances are so clearly proved, and point so conclusively to the guilt of the

appellant, that there appears to be no ground for reasonable doubt. We think that the jury, in finding the appellant guilty, as charged in the indictment, reached a correct conclusion.

We have thus, deeply impressed with the importance and magnitude of the case, involving, as it does, the life of a human being, given each question presented our best consideration. Our acknowledgments are due to counsel, both for the appellant and for the State, for their able briefs and oral arguments, which have been of great assistance in our labor.

The record does not disclose any error prejudicial to the legal rights of the appellant.

Judgment affirmed.