The Union Mutual Life Insurance Company v. Buchanan.

No. 10,002.

## THE UNION MUTUAL LIFE INSURANCE COMPANY v. BUCHANAN.

ATTORNEY AND CLIENT.—*Attorney's Fees.*—*Contract.*—*Principal and Agent.*— Where it is provided in a contract between an agent and his principal, that said agent as attorney, in making collection of loans made by him upon real estate as agent for such principal, should be entitled to receive as compensation in case of suit " any sum that may be collected as attorney's fees as provided in the bond or instrument upon which suit may be brought," he is entitled to the amount of fees actually collected in such suit. If the whole amount, as specified in the instrument and reduced to judgment, is realized, he is entitled to it; if, however, the property is sold on execution to a third person for a less amount than the judgment, or bid in by his principal for a less amount than the judgment, but yet at the actual value of the property, he should receive a sum out of the amount realized, or the actual value, as the case may be, in proportion to his interest in the judgment.

SAME.—*Power to Compromise Claims.*—*Damages.*—An attorney has no general power to compromise claims of the client; but where there is not time or opportunty for consultation with the client, he may, in the exercise of a reasonable discretion, negotiate a compromise where the circumstances are such that he must act without delay, and where the interests of his client will be seriously imperilled unless he so act, and if he act in good faith, with fair skill and vigilant care, he is not liable for damages.

SAME.—*Collections.*—*Retaining Fees from.*—Where an attorney collects money for a client, he has a right to apply such money upon fees due him for making such collection, and, also, upon any other fees that may be due him from such client for professional services.

SAME.—*Fees, Action for.*—Where a client collects fees belonging to an attorney, the latter may maintain an action for them as for money had and received.

SAME.—*Implied Contract.*—The fact that an attorney is employed as an agent to negotiate loans does not preclude him from rendering professional services, if requested by his principal, and if so rendered he is entitled to recover the reasonable value thereof upon the implied contract.

PRINCIPAL AND AGENT.—*Loan Agent.*—*Evidence.*—*Recitals in Written Instrument.*—Recitals in reports of appraisers, chosen by an agent appointed to negotiate loans, to place a value on property upon which loans are asked, constitute no evidence of the truth of the facts stated, but may be considered in determining whether the agent acted in good faith.

SAME.—*Non-Resident Principal.*—*Agent's Liability.*—*Fraud.*—*Negligence.*— Where such an agent sends to his non-resident principal such informa-

The Union Mutual Life Insurance Company *v.* Buchanan.

tion regarding the security offered as he has obtained, he is not liable for losses unless he is guilty of fraud or of negligence in not obtaining more.

SAME.—*Evidence.*—*Reasons for Writing Letter.*—*Witness.*—A witness can not be permitted to state the reasons which influenced him to write a letter, not ambiguous in meaning, in which he gave explicit directions to his agent to do a designated act, as such agent may act upon the letter, and the reasons existing in the mind of the writer can not, unless known to the agent, affect his rights.

SAME.—*Implied Contract.*—*Money Had and Received.*—In an action by an agent against his principal on an implied contract to account to him for money had and received, and to pay the reasonable value of the agent's services, the plaintiff may prove how much of his time was devoted to the business of such principal.

SAME.—*Measure of Compensation.*—Where a rate of compensation for services is fixed by contract, that rate governs ; but where there is no contract fixing the rate, the reasonable value of such services is the measure of compensation to be recovered.

SAME.—*Custom.*—*Jury.*—Where there is a customary value fixed for services, that rate controls ; but where there is no such customary rate, the jury must ascertain their value from the evidence placed before them.

ACTION, DELAY IN BRINGING.—*May be Explained.*—*Statute of Limitations.*—Within the period prescribed by the statute of limitations, or where there is no such statute, delay in bringing an action at law may be explained, and the fact that such delay is explained may be deduced by inference from the facts developed by the whole evidence.

EVIDENCE.—*Court Not to Determine Probative Force.*—*Instructions.*—It is not for the court, in ruling upon evidence, or in framing instructions, to determine the probative force of evidence. If it is material, relevant and competent, it is for the jury, and instructions bearing upon it, without respect to its weight or credibility, can not be deemed irrelevant.

INSTRUCTIONS.—*How Considered.*—Instructions are not to be considered in separate and detached parcels, but must be taken as a whole, and if, when so considered, they express the law without material contradiction, there is no error.

SAME.—*Evidence to Which Applicable.*—Where there is evidence to which an instruction is applicable, it is immaterial by whom or for what purpose it was introduced.

SAME.—*Repetition of.*—Where a proposition of law is once fully and clearly stated to the jury, it need not, and ought not to, be repeated in subsequent instructions.

SAME.—*Inferences.*—*Province of Jury.*—It is not proper for the court to instruct the jury as to mere inferences of fact which it is their duty to make from the evidence.

The Union Mutual Life Insurance Company v. Buchanan.

SAME.—For instructions generally, embracing the principles governing this case, see opinion.

HARMLESS ERROR.—A judgment will not be reversed for a harmless error.

From the Marion Superior Court.

*S. Claypool* and *W. A. Ketcham,* for appellant.

*S. M. Shepard, C. Martindale, J. Buchanan* and *G. B. Manlove,* for appellee.

ELLIOTT, J.—The appellee became the agent and attorney of the appellant in August, 1872, and in the bond executed to secure the faithful discharge of the duties of the agency is the following:

"Whereas the said Jas. Buchanan has been duly appointed by the Union Mutual Life Insurance Company of Maine as their financial and loan agent for the State of Indiana, and is intrusted and charged with the investment of any and all money intrusted to him for investment upon first mortgages upon real estate worth at least twice the amount loaned thereon, said investment only to be made by him after the proposed application and security have been approved by said company, and the proposed borrower's bond duly executed and delivered to him, and the mortgage securing same has been duly executed and deposited for record, then he is to draw his draft upon said company for the amount of the proposed loan, less the cash portion of any premium for life insurance that may be payable out of such loan. The said borrower of any sum is to pay all expenses of loan obtained. The said agent is to collect and remit any and all money due of loans made by him, whether of principal or interest, free of charge to said company, except in case of suit; the said agent as attorney for said company shall be entitled to receive as compensation in such suit any sum that may be collected as attorney's fees as provided in such bond or instrument upon which suit may be brought. The compensation for services of said agent shall be for such sums as may be agreed upon between him and the borrowers, as a commission for negotiating the loans,

and the said company shall not be liable to said agent for any compensation for services except as above provided in case of suit for collection."

For a series of years Buchanan acted under this contract, and now claims compensation for legal services rendered the appellant, and for attorney's fees received by it in cases where the money due upon loans was collected by suit.

There are more than twenty-five hundred pages of evidence, and we shall make no general synopsis, but shall refer to that part of the evidence involved in the argument of counsel as we take up the questions in the order in which they are presented.

It is proper to preface our discussion of the instructions by stating the rule, so often repeated in our decisions, that instructions are not to be considered in separate and detached parcels, but must be taken as a whole, and if, when so considered, they express the law without material contradiction, there is no error. Counsel for appellant, by detaching the instructions assailed from the group in which they properly belong, pursue a course which is not borne out by reason or authority, for no writings, literary, law, or any other, can be justly judged by piecemeal.

The court in its third instruction entered upon the work of construing the contract between the parties, and stated that there were three general classes of services provided for in that instrument. The first class, the jury were informed, embraced "all services necessary, or properly incident to the investment of any and all money entrusted to the plaintiff, and would include the preparation and examination of papers and records, the procuring of insurance, and the performance of other like acts." The fourth instruction directed the jury that for such services the plaintiff must look to the borrower alone for compensation. The fifth instruction defines, and correctly, the second class of services provided for by the contract to be services rendered in making collections without suit. The third class of services are defined by the fifth instruction to be services rendered in the collection of claims by

suit, and the seventh describes very clearly and correctly states what such services are.

In the sixth instruction the court stated the second question to be "the amount and mode of payment specified in the bond for such services," and it is to this question that the eighth instruction (to be presently noticed) refers. No objection is made to any of the instructions we have mentioned, but a reference to them is necessary in order to justly understand the force of the eighth, ninth, tenth and eleventh, to which objections are urged, for these instructions form a group covering one branch of the case. The instructions here assailed read thus:

"8. I will now endeavor to answer the second inquiry, what is the amount and mode of payment specified in bond for services of making collections by suit? The amount is whatever may be collected as attorney's fees in such suit, which of course can not exceed the amount specified in the judgment, which amount is fixed by the bond or other instrument securing the loan sought to be collected by such suit. There can be little or no difficulty when the full amount of the attorney's fees provided for in the judgment was in fact collected in money by sale or otherwise. That is what the plaintiff was entitled to. If he got that, then he was entitled to no more. If the defendant collected it, and failed to pay it over to him, then the defendant was bound to compensate him therefor.

"9. If a judgment was taken in such suit, but it has never been satisfied by sale, or otherwise, then the plaintiff is not entitled to recover the attorney's fees specified in such judgment, for by the bond he is entitled only to such sum ' as may be collected as attorney's fees.'

"10. Suppose, however, that in a suit for collection upon a loan made by plaintiff, prosecuted by him in behalf of defendant, he recovered a judgment for $1,050, including, say $50 attorney's fees, suppose that he procured a sale of the land mortgaged to secure such loan, to satisfy such judgment, and that upon such sale only $500 was bid, and nothing more

was ever realized upon said judgment, what would the plaintiff be entitled to out of the amount realized? I answer that he and the defendant would each be entitled to receive out of the fund realized in proportion to their interest in the judgment itself, that is, in the case supposed, the plaintiff would be entitled to one $\frac{1}{21}$ parts, or $23.81, and the defendant to twenty $\frac{1}{21}$, or $476.19.

" 11. Suppose, again, that after taking judgment, as in the case last supposed, for $1,050, including $50 attorney's fees, the plaintiff procured a sale of the mortgaged land, but nobody bid anything, and in order to sell or get anything out of the judgment, it was bid in by defendants at $500, this being all that it was worth, and nothing further ever being realized upon such judgment, what would be the compensation to which plaintiff would be entitled in such case? I answer, that it would be just the same as in the former case, that is, he would be entitled to a sum out of the actual value of the land in proportion to his interest in the judgment, which would be, in this case, as in the other, $23.81, and this the plaintiff would become liable for to the plaintiff as soon as the land was bid off."

These instructions not only state the law correctly upon the subject they cover, but they present it with such perspicuity and precision as to entitle them to high commendation.

The general rule is that fees earned by an attorney who conducts the suit belong to him, and not to his client. We need not stop to inquire whether it would, or would not, be against public policy for an attorney and client to agree that the latter should take the fees, or part of them, for here the contract between the attorney and client secures the fees to the attorney. If the fees did belong to the attorney, and were in fact received by the client, there can be no doubt that the former might have his action, as for money had and received, if the latter refused to account for the fees collected.

It is said by counsel that " the words ' collected in money by sale or otherwise,' contained in the eighth instruction,

might, perhaps, standing alone, be construed to mean an actual collection in money, but there was no evidence tending to make such a case." We are satisfied that even if it were proper— as it certainly is not—to isolate this phrase from its associate words, the jury could not have been misled, and if this be true, as it is, then there was nothing more than a harmless error, and for harmless errors judgments are never reversed.

Where, as here, fees to which the attorney is entitled are received by the client, the attorney may maintain an action for them. It can make no difference whether the client takes pay in money or property, for, if he does receive the full value of the fees, he has neither a legal, moral nor equitable right to deprive the attorney of them. The clause assailed does, therefore, assert an abstract proposition in correct terms, and we are not willing to say that there was no evidence to which it was applicable, for the record by no means excludes such a hypothesis.

The counsel object to a similar clause in the ninth instruction, and affirm that it must have controlled the decision of the jury. If it did so far control the jury as to carry them to the conclusion that the appellee was entitled to recover for fees received by the appellant either in money or in property, it produced a just result. We can not say that there was no evidence that the property which the appellant in some instances acquired did not pay both its debt and the attorney's fees. But, if we are wrong in this, still no harm resulted to the appellant, because the tenth and eleventh instructions declare, with unusual clearness, that where the fees were received by the appellant in part, and not in full, the appellee's right of recovery was limited to the amount actually received. It is not possible to presume, without doing great violence to the language of the trial court, that the jury understood the court to direct them that the appellee was entitled to recover whether the appellant had, in fact, received the attorney's fees in whole or in part. The ninth instruction, in very forcible

language, says that the appellee " is entitled only to such sum as may be collected as attorney's fees."

The court was unquestionably right in directing the jury that the appellee was entitled to recover the proportion that the fee bore to the whole amount realized. Both the client and the attorney had an interest in the judgment recovered, and the former could not grasp all the avails of the sale on the final process, and exclude the latter from participation in the proceeds. The services of the attorney were valuable to the client, and he was entitled to recover at the specified rate of compensation upon the amount realized by the client. The example put by the court was just and apposite; and properly explained the law to the jury.

The tenth and eleventh instructions do not exclude the evidence of the value of the land from the jury. The reverse of this is true. These instructions clearly direct the jury that where the full amount of the attorney's fees was not yielded by the land bought in on the judgments, the attorney could recover no more than the proportion the fees bore to the whole amount, reckoned according to the specified rate of compensation, and upon the sum actually realized by the client.

We do not think the eleventh instruction will bear any such construction as that which counsel endeavor to place upon it. We do think that it informs the jury in plain terms, that if the land in the case supposed was bid in at $500, and this was all it was worth, the appellee could only recover attorney's fees for the collection of that sum, no matter what was the amount of the judgment. We do find evidence upon the subject of the value of the land acquired on the judgments, and, therefore, find evidence to which the instruction is applicable. We suppose it to be perfectly clear that if there is evidence upon the subject, it is utterly immaterial by whom, or for what purpose, it was introduced.

The thirteenth instruction is not faulty. It is a familiar rule of law, that where a rate of compensation is fixed by con-

tract, it will govern so far as to furnish the measure for computing the compensation to be awarded the party entitled to a recovery. It is also undoubted law, that where services are performed at the request of a defendant, and there is no contract fixing their value, the plaintiff is entitled to recover their reasonable value. It is likewise true, that where there is a customary value fixed for such services, that rate controls; but where there is no such customary rate, the jury must ascertain their value from the evidence placed before them.

The nineteenth instruction given by the court reads thus:

" 19. But the fact that the plaintiff may have suffered a long period of time to elapse without making demand or bringing suit for the alleged items of indebtedness for which he sued, is susceptible of various explanations consistent with the hypothesis of the justness of his claim, and it is for you to say whether or not the plaintiff has offered one that is satisfactory or not."

If we were to detach this instruction from the group in which it is found, and consider it apart from those with which it is associated, we could not condemn it, for it accurately asserts an abstract proposition of law, and is correct as far as it professes to go. It is true that delays in prosecuting actions may always be explained except where the delay is beyond the period prescribed by the statute of limitations. Where there is no statute, there may always be an explanation. The court, in asserting that the delay was susceptible of explanation, neither expresses nor implies that there was an explanation, but simply says that the delay is one susceptible of explanation, and in express words leaves it to the jury to determine whether or not the plaintiff had offered a satisfactory explanation. If the learned counsel are right, then, when the delay was shown, no evidence of an explanatory character should have been admitted, but the court should at once have closed and bolted the door against its admission, and this conclusion reveals, in its bare statement, its own refutation. A respectable writer says: "At the common law there was no limit

to the time within which an action might be brought, except in the single instance of a fine, with proclamation." Wood Lim., p. 2, section 2. Dr. Wharton writes: " The presumption, however, is open to be rebutted by proof of the intermediate insolvency of the debtor, or of other grounds for the suspension of the debt." 2 Whart. Ev., section 1320a.

There is, and has always been, a defined and known distinction between actions to enforce a clear legal right and suits to enforce a purely equitable claim. The principles which rule in the latter cases do not prevail in the former. Here the action is to enforce a legal right, and the principles of law rule the case.

Counsel, in endeavoring to prove that the instruction is not pertinent to the case, narrow the effect of the evidence far too much. In civil actions, it is not essential to prove a fact by positive or direct evidence; it is, indeed, not essential that a fact should be so established in prosecutions for crimes of the gravest character, for even there the fact may result from a process of inference. In speaking of this subject Professor Greenleaf says: " In both cases, a verdict may well be founded on circumstances alone; and these often lead to a conclusion far more satisfactory than direct evidence can produce." 1 Greenl. Ev., section 13a. Our court has often declared that a fact may be inferred from circumstances. *Hedrick* v. *D. M. Osborne & Co.*, 99 Ind. 143; *Terre Haute, etc., R. R. Co.* v. *Pierce*, 95 Ind. 496; *Indianapolis, etc., R. W. Co.* v. *Thomas*, 84 Ind. 194; *Indianapolis, etc., R. R. Co.* v. *Collingwood*, 71 Ind. 476. The fact that the delay in bringing an action is explained may, like any other fact, be deduced by inference from the facts developed by the whole evidence.

There were circumstances disclosed by the evidence in this case making the instruction under immediate mention directly relevant. In the vast volume of testimony before us, there is evidence explaining in great detail the situation, business and conduct of the litigants, and upon the jury devolved the duty of determining whether the delay from 1871 until 1878 was,

or was not, satisfactorily explained. It is not for the court, in ruling upon evidence, or in framing instructions, to determine the probative force of evidence. If the evidence is material, relevant and competent, it is for the jury, and instructions bearing upon the evidence, without respect to its weight or credibility, can not be deemed irrelevant. *Boots* v. *Canine*, 94 Ind. 408, see p. 411; *Nave* v. *Flack*, 91 Ind. 205; *Hall* v. *Henline*, 9 Ind. 256; *Harbor* v. *Morgan*, 4 Ind. 158. It is no doubt true that the instructions must be relevant to the evidence, but this does not mean that they shall be only pertinent to the positive evidence, or to the most weighty testimony. The rule is thus stated by Judge Thompson: "But in order to justify him" (the judge) "in giving an instruction predicated upon a supposed state of facts, it is not necessary that he should be entirely satisfied of the existence of such facts; but if there is any evidence from which the jury may infer them to be true, it is his duty to declare the law thereon; and it is not error for him to do so even where the evidence is very slight." Thomp. Charging the Jury, section 62.

The nineteenth instruction is, however, grouped with instructions fifteen, sixteen, seventeen and eighteen, prepared by appellant's counsel, and given at their request, and it would be illogical to dislocate it and consider it as if it stood alone. Taking, as it is our duty to do, all these instructions together and treating them as a whole, we have no hesitation in declaring that the law was stated to the jury quite as favorably as the appellant had a right to ask. These instructions of the appellant in themselves refute the proposition that there was no evidence to which the nineteenth was pertinent, for they assume, and justly, that there was such evidence.

The fact that an attorney is employed as an agent to negotiate loans does not preclude him from rendering professional services, if requested by his principal. Loaning money is one thing; giving advice in matters of law, and conducting suits, are quite different things. This is so in every case where there is no stipulation to the contrary, and certainly so here. The

The Union Mutual Life Insurance Company v. Buchanan.

twenty-first instruction of the court, which reads thus: "21. The mere fact that the defendant employed plaintiff as an agent to loan money, did not of itself require plaintiff to render service as an attorney, without compensation," asserts this proposition in guarded terms, and contains no legal heresy.

It is abundantly settled that courts will presume jurors to be men of average intelligence, and capable of understanding and bearing in mind a proposition of law once fully and clearly stated, without its repetition in subsequent instructions. *Goodwin* v. *State*, 96 Ind. 550; *Browning* v. *Hight*, 78 Ind. 257; *McDonel* v. *State*, 90 Ind. 320, see p. 327.

Thompson says: "In every case, then, where error is assigned on instructions given or refused, the initial point of inquiry is whether the jury were misled. * * * * * * The jury are presumed to have understood the charge according to the fair import of its terms when taken together." Thomp. Charging the Jury, section 131.

We have again and again decided that if all the instructions taken together express the law correctly, there is no error even if one instruction, standing alone, is incomplete and liable to be misunderstood. *Stout* v. *State*, 96 Ind. 407; *Goodwin* v. *State*, *supra; McCarty* v. *Waterman*, 96 Ind. 594; *Lytton* v. *Baird*, 95 Ind. 349; *Garber* v. *State*, 94 Ind. 219; *Louisville, etc., R. W. Co.* v. *Harrigan*, 94 Ind. 245; *Young* v. *Clegg*, 93 Ind. 371; *Western U. Tel. Co.* v. *Young*, 93 Ind. 118.

This well known rule overthrows the argument of counsel, that, conceding the instruction to be correct as an abstract proposition of law, still it was erroneous, because it led the jury to believe that Buchanan was entitled to compensation for legal services rendered in negotiating loans. We affirm that by the application of this rule the argument is overthrown, for the reason that in the previous instructions to which we have referred, the court directed the jury, in language strong and clear, that for such services there could be no recovery. We can not conceive it possible that the jury could have been misled.

It is a familiar rule that the party who asks a reversal must affirmatively show error, and this has certainly not been done by appellant in its attack upon the instructions on the subject of the appellant's delay in enforcing the payment of his claim.

The twenty-seventh instruction, of which counsel complain, was given at their request, and they certainly can not be heard to say that it asserts erroneous propositions of law. Notwithstanding the fact that the record makes it appear that this instruction was given at the request of the appellant, we have examined it, lest we might have misunderstood the recital of the record, or lest some mistake might have crept into it.

Our examination of the twenty-seventh instruction has satisfied us that it correctly states the law. It affirms that the reports of the appraisers chosen by Buchanan to place a value on property upon which loans were asked were not evidence of the statements contained therein, but constituted evidence " tending to show, in connection with other evidence, that Buchanan in making the loans did, or did not, act in good faith in recommending the loans." Recitals in such instruments constitute no evidence of the truth of the facts stated, but may be considered in determining the question whether the agent appointed to negotiate the loans did act in good faith.

The thirty-fourth instruction given by the court is as follows :

" 34. In regard to the compromise effected by plaintiff with Schofield, I instruct you as follows : It is the duty of an attorney, when practicable, and as promptly as practicable, to advise his client of all the material facts and legal bearings which may affect his client's interest in a pending litigation, and he should not undertake, without having done so, or without authority from his client, to compromise such litigation, and if he does, he will be held to his client for damages, if any, resulting to him thereby. But if there is such an emergency as requires the attorney to act promptly and before he can advise with his client, and the attorney, acting in good

faith, with reasonable care and skill, compromises such litiga-
tion, he will not be held liable to his client, although it may
turn out afterwards that the compromise was not the best that,
could have been made, or that the client would have fared
better without any compromise at all. Applying these legal
principles to the present case, it will be for you to say whether
the defendant is entitled to anything, and if so, how much, on
account of the compromise with Schofield."

There is some conflict among the cases as to the general
power of an attorney to bind his client by a compromise, and
it is not easy to say which "hath the better reason." The
weight of authority is, perhaps, against the power. Pulling
Att. 198; Weeks Att. 394; Whart. Agency, section 590.
Our decisions have steadily maintained that the attorney has
no general power to compromise claims of his client. *Miller*
v. *Edmonston,* 8 Blackf. 291; *Jones* v. *Ransom,* 3 Ind. 327;
*Wakeman* v. *Jones,* 1 Ind. 517; *McCormick* v. *Walter A.*
*Wood M. & R. M. Co.,* 72 Ind. 518.

These decisions, however, merely state the general rule and
apply it to cases where there was no reason for the attorney's
omission to consult with his client, and no excuse for depart-
ing from the instructions received by him. In the charge of
the court now before us, this general doctrine is fully declared,
but it is also affirmed that there may be cases in which the
attorney may compromise a pending litigation. If there are
no cases in which the attorney can exercise such an authority,
then the instruction must be condemned, but if there are such
cases, then it should be upheld.

The attorney in charge of pending litigation is bound to
give to his client's interest fair learning and skill, vigilant
attention and care, and to so conduct it as to secure to his
client all he is justly entitled to receive. It is the attorney's
duty to guard, in every form, the interests of his client, and
if, therefore, an emergency arises which demands that a com-
promise shall be effected, it is the duty of the attorney to se-
cure the most favorable one that he can obtain. If it be

granted that there is no instance in which an attorney can effect a compromise for his client, it must be also conceded that the attorney must remain passive, even in cases where by discreet action he might save the sacrifice of the interests of his client. We are satisfied that an attorney may negotiate a compromise where the circumstances are such that he must act without delay, and where the interests of the client will be seriously imperilled unless his action is prompt and decisive. If there is time and opportunity for consultation with the client, then the attorney should not assume authority to compromise his client's claim; but if there is an emergency that prevents consultation, and forces immediate action, it is the duty of the attorney to take such steps as will secure the greatest benefit to his client. The necessity creates the authority, and the position of the attorney demands that the authority be exercised for the client's good. Where there is no emergency, there is no authority, but the authority springs into existence with the emergency. To deny this would be to affirm that there are cases where the attorney must stand idle when action would save his client from loss, and this is incompatible with the general principle that it is the duty of an attorney to do all that can justly be done to promote the interests of his client. Dr. Wharton, in commenting upon this subject, says: "An attorney or counsel, in charge of a case, who does not effect a judicious compromise when open to him, is untrue not only to his client, but to the great cause of public justice of which he is a minister." Whart. Agency, section 590. Upon the same general subject the Supreme Court of Massachusetts said: "It is important to parties that such an authority should be liberally construed; for many exigencies are likely to arise in the progress of a cause, that demand the exercise of discretion when there is no opportunity to consult with a client." *Wieland* v. *White*, 109 Mass. 392. But we will not prolong this opinion with quotations, for we think that even in those cases which deny the general authority to compromise, the reasoning fully establishes the doctrine of the instructions, for even though

they deny the general authority to compromise, they still affirm that if there is not an opportunity for consultation, and if there is an exigency, imperatively demanding the exercise of the authority, the attorney may exercise a just and reasonable discretion, and is not liable if he acts in good faith, with fair skill and vigilant care. Story Agency (9th ed.), 27, n.; *Whipple* v. *Whitman*, 13 R. I. 512; S. C., 43 Am. R. 42; *Kirk's Appeal,* 87 Pa. St. 243; S. C., 30 Am. R. 357; *Granger* v. *Batchelder*, 54 Vt. 248; S. C., 41 Am. R. 846; *Holker* v. *Parker*, 7 Cranch, 452.

We do not, however, understand counsel as assailing the instruction upon the ground that it states the law incorrectly, but upon the ground that it was erroneous as applied to the evidence. We think counsel are in error. It leaves to the jury the question whether there was an emergency justifying immediate action, and it did not divert the minds of the jury from the real controversy. It referred, and only professed to refer, to one particular point, and the jury could not have understood it as referring to any other. It does not limit, by the remotest implication, the jury to the consideration of the points referred to, but it states, and admirably states, a general principle of law applicable to the subject to which it professed to be directed, and to which it was, in fact, addressed.

There were, as we find from a study of the evidence, two theories as to the Schofield compromise mentioned in the instruction, and we can not say that neither was without some support. As there was evidence upon the subject, the court did right in charging the law upon it without assuming to decide upon its weight. It was for the jury to ultimately decide whether the one theory or the other was correct, and to determine whether the evidence was entitled to credit or not. *Nave* v. *Tucker*, 70 Ind. 15; *Goodwin* v. *State*, 96 Ind. 550.

It is argued that the evidence shows that the necessity which led to a compromise grew out of Buchanan's inexcusable blunder, and that, therefore, the instruction is erroneous. The fallacy of this argument is apparent. The instruction is addressed to an entirely different theory, and the real question

is whether it is a correct statement of the law as applied to that theory, not whether it is a correct expression of the law when applied to a different theory. Counsel say of the effect of this instruction : " It was to lead the jury into this line of reasoning: 'Buchanan did not previously consult his client about the compromise because there was an emergency for immediate action. The master in chancery was about to report a finding against Buchanan's client, and something had to be done at once to prevent this, and it was done, and rightfully, because of the emergency.'" This criticism proves the correctness of the instruction, and thus defeats the purpose of its author. If there was an emergency so pressing as that arising from the adverse decision of the master, there was no opportunity for consultation with the client residing in a foreign State, and it was the duty of the attorney to act. If it was the duty of the attorney to act, then it was proper for the court to so inform the jury, and to lead their minds into a proper train of reasoning. It is a merit, not a fault, to lead the minds of the jury into a proper line of ratiocination.

The thirty-fifth instruction of the court reads thus :

" 35. In regard to the Masten land, I instruct you, that it is the duty of the attorney as soon as he reasonably can, after *collecting money for his client,* to report the fact to such client, to keep such collections unmixed with his own money, and, within a reasonable time after such collection, to remit the amount collected, less his fees, to his client, unless he receives instructions to the contrary. *He has a right, however,* to apply such collection, not only upon the fees due him for making the same, but also upon whatever fees may then be due him for professional services from such client; and, therefore, he is not bound to remit anything, if such client is indebted to him for fees due him for such professional services, an amount greater than the amount of such collection."

The abstract propositions of law stated in this instruction are correct; an attorney has a right to retain his fees out of moneys collected for his client. The instruction does not as-

The Union Mutual Life Insurance Company v. Buchanan.

sume that the money from the Masten land came into the hands of Buchanan, nor does it profess to cover the whole of the Masten affair; it simply states that when fees are due the attorney, and he collects money for his client, he may retain his fees out of it, and does not, directly or indirectly, intimate any other doctrine; nor does it profess to cover or apply to any other phase of the case than that of the right of the attorney to retain his fees. One instruction need not, and manifestly can not, cover every phase of a complicated case.

The court refused to give the seventh instruction asked by the appellant, and we think properly, for it was nothing more than the repetition of a rule fully stated in instructions numbered thirty-eight, thirty-nine, forty and forty-one, given at the request of the appellant. It is not the duty of the court to repeat legal rules in various forms; it is sufficient if the rule is once fully and clearly stated. It would not, perhaps, be available error to often repeat, but it would certainly be a censurable practice, for it would tend to confuse the jury, and might give undue emphasis and prominence to a particular fact, and this it is not well to do. *Goodwin* v. *State, supra*; Thomp. Charging the Jury, p. 101.

The ninth and tenth instructions asked by the appellant, and refused by the court, read as follows:

" 9. If there is anything in the correspondence which has been introduced before you which may seem to corroborate any of the testimony of James Buchanan, you should not treat it as a corroboration of his testimony, if, under all the evidence, you are satisfied that he has studied that correspondence and so shaped his testimony as that the correspondence might seem to corroborate his testimony.

" 10. A letter of April 25th, 1877, written by Mr. Sharpe, vice-president, to James Buchanan, is in evidence before you. In that letter Mr. Sharpe recites what he says was the agreement concluded between him and Buchanan in regard to fees, in February, 1877, and concludes with a statement from Mr. Sharpe, ' that he will call upon Mr. Buchanan in a few weeks

on his way west.' This letter was introduced by James Buchanan, and in connection with the letter it is claimed that he, Buchanan, testified that within a few weeks after receiving said letter he did see Mr. Sharpe in Indianapolis, and told him (Sharpe) that he (Sharpe) had misstated in said letter the agreement between them, and Mr. Sharpe had assented that he had misstated the agreement between them. Now, if you find that Mr. Buchanan did, in connection with such letters so testify, and he purposely stated that he saw and talked with Mr. Sharpe at said time, when in fact he did not, but made the statement that he did because he supposed that the conclusion of said letter would corroborate the statement in part, and that such statement was made solely because he thought the letter would in part furnish a corroboration, and that in this particular he purposely so shaped his evidence as to seem to be corroborated by the letter, you have a right to presume he has done the same thing in regard to other correspondence wherein it may seem to corroborate him."

These instructions were properly refused. It is not proper for the court to instruct the jury as to mere inferences of fact which it is their duty to make from the evidence. Instructions should state legal principles, not declare inferences of fact. They may be declarations of law, but not commentaries upon evidence. The law is for the court; the facts are for the jury. Inferences from proved facts must be made by the triors of the issues of fact. The instructions under immediate mention do not contain a single proposition of law; they simply embody the result of counsel's deductions from what they assume the evidence establishes. In an argument to the jury they have a proper place, but in the instructions of the court they are out of place. If courts were to undertake to direct the jury as to particular inferences of facts, the charge would be an argument upon the facts and not an exposition of the law. Our decisions agree that it is not proper for the court to instruct the jury upon mere inferences of fact, except

in rare cases, where settled rules of law declare definite results to flow from known facts. The deductions embodied in these instructions affect the credibility of witnesses, and like kindred matter are fair subjects for comment in addresses to the jury. Thompson says: " It is, therefore, merely a repetition of what has already been said, to say that it is for the jury, and not for the judge, to draw presumptions of fact; and that, for the judge to tell the jury what presumption of fact they ought to draw from a given fact or series of facts, is a usurpation of their functions." In commenting approvingly upon the case of *Bond* v. *Warren*, 8 Jones, 191, this author said : " It was for the jury, and not for the judge, to draw inferences or presumptions of fact from the evidence." Thomp. Charging the Jury, p. 64.

In the case of *Woollen* v. *Whitacre*, 91 Ind. 502, it was said : " The decisions of this court are numerous to the effect that it is error for the court to say or intimate to the jury that any circumstance or fact should be considered by them to the disparagement of a witness's testimony." The court, in another case, in speaking of matters such as those mentioned in appellant's instructions, said : " These are matters about which the law lays down no general or inexorable rule. They constitute facts for the consideration of the jury in every case in which such questions may arise." *Millner* v. *Eglin*, 64 Ind. 197. But it is unnecessary to make further quotations, and we leave the question without doing more than directing attention to the following cases: *Newman* v. *Hazelrigg*, 96 Ind. 73; *Finch* v. *Bergins*, 89 Ind. 360; *Works* v. *Stevens*, 76 Ind. 181 ; *Davis* v. *Hardy*, 76 Ind. 272 ; *Garfield* v. *State*, 74 Ind. 60; *Voss* v. *Prier*, 71 Ind. 128 ; *Evansville, etc., R. R. Co.* v. *Wolf*, 59 Ind. 89 ; *Pratt* v. *State*, 56 Ind 179 ; *Veatch* v. *State*, 56 Ind. 584 ; *Nelson* v. *Vorce*, 55 Ind. 455 ; *Greer* v. *State*, 53 Ind. 420.

There was no error in refusing the fourteenth instruction asked by the appellant. It asserts that an agent is responsible for losses resulting from loans negotiated by him for a

non-resident principal in cases where the agent sends to the principal the appraisements upon which the loans were made, unless he, the agent, has advised him of the sources of his knowledge, and such loans have been accepted by the principal with full knowledge of the sources of the agent's information. Where the agent sends to his non-resident principal the appraisements, he does impart information of the facts upon which he acts, and the instruction is faulty for the reason that it does not give due importance to the act of the agent in placing the appraisements before the principal.

An agent is not responsible for an error in judgment in transacting the business of his principal, but he is responsible if he conducts the business negligently, or fails to bring to it proper skill and knowledge, or acts in bad faith. Whart. Agency, sections 272, 273, 274. An agent is not responsible unless he has been guilty of some misconduct, and it can not be asserted, as a matter of law, that an agent who places in the hands of his principal the appraisements of property upon which loans are sought is guilty of misconduct, from the bare fact that he does not add to this information a statement of his own judgment, or does not also give further information. If he had concealed additional information that he actually possessed, the case would be essentially different. Where, however, he sends what he has, and is not shown to be guilty of negligence in not obtaining more, he is not liable, unless, indeed, he was guilty of fraud. A principal who receives such information as this instruction assumes that the appellant did receive, ought, in good conscience, to call for more if he is not content with it.

There was no error in refusing to permit the appellee to dismiss part of his complaint, for it is well settled that a plaintiff may dismiss as to part or all of his cause of action before the jury retire. *Cohn* v. *Rumely*, 74 Ind. 120; *Burns* v. *Reigelsberger*, 70 Ind. 522; *Carter* v. *Spencer*, 4 Ind. 78.

A witness can not be permitted to state the reasons which

influenced him to write a letter, not ambiguous in meaning, in which he gave explicit directions to his agent to do a designated act. A party to whom a letter is addressed, containing explicit directions, may act upon the letter, and the reasons existing in the mind of the writer can not, unless known to the recipient of the letter, affect the rights of the latter. There was, therefore, no error in refusing to permit the appellant's vice-president and acting executive officer to testify as to the reasons which induced him to write to Buchanan directing him to make collections of interest.

We perceive no harmful error in the ruling permitting Buchanan to testify as to the statements of the appellant's officers concerning the amount of the money they would furnish him to loan in the State of Indiana, for, conceding, but by no means deciding, that the evidence was incompetent, still the instructions so clearly directed the jury as to the basis upon which a recovery could be had, and the evidence so fully shows that nothing was allowed upon this evidence, that it is plain that no harm was done the appellant.

It was not improper to permit the appellee to prove how much of his time was devoted to the business of the appellant, for this evidence tended, in some degree, at least, to show the value of his services. The written contract does not provide the rate of compensation for all services, and does not, therefore, cover the entire claim which the evidence tended to make out in favor of the appellee.

The right of the appellee to recover does not depend upon the written contract; that does not fix his compensation for all services performed for the appellant, but does provide that he shall receive his compensation for making loans from the borrowers, and that in cases where collections are made by suit he shall be entitled to the attorney's fees provided in the bond of the borrower. When, therefore, the appellant collected the attorney's fees, it became liable to the appellee for money had and received, and when it requested him to perform legal services, and he did perform them, he became en-

titled to recover the reasonable value of such services upon the implied contract. It is perfectly clear, therefore, that the written contract was not the foundation of the action. The counsel are, therefore, clearly in error in asserting that the right of action rests entirely on the written contract, for the cause of action rests on the implied contract to account for the money had and received for the appellee's benefit, and upon the implied contract to pay him the reasonable value of his services. It results that it can not be held that there was a failure of proof, or that evidence tending to prove facts from which the law would raise the implied contract was incompetent.

We have given this case full and careful consideration, notwithstanding the fact that counsel for the appellee have pointed out many omissions and imperfections in the record. We have departed from the long established rule in doing this, but the peculiar circumstances of the case, and the great complication and length of the record, seemed to at least excuse, if it does not justify, this course. In considering the point that the verdict is not supported by the evidence, we have not regarded, as in strictness we should have done, the imperfect state of the record, but have treated the record as full and perfect, and have found in it evidence on all material points sustaining the verdict, so that we can do no otherwise than refuse to disturb the finding of the jury.

Judgment affirmed.

Filed Jan. 20, 1885. Petition for a rehearing overruled March 31, 1885.