

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

March 23, 1959

Honorable Dorsey B. Hardeman
Chairman
State Affairs Committee
Senate of Texas
Austin, Texas

Opinion No. WW-575

Re: Constitutionality of
Senate Bill 54, 56th
Legislature, relating
to eligibility require-
ments of persons who
may receive public wel-
fare benefits, and re-
Dear Senator Hardeman:       lated questions.

We have received your request of March 3, 1959,
in which you seek our opinion on the validity of Senate
Bill 54 of the 56th Legislature, relating to eligibility
requirements of persons who may receive public welfare
benefits or who may be admitted to eleemosynary institu-
tions of this State.

Senate Bill 54 reads in part as follows:

"AN ACT relating to eligibility require-
ments of persons who may receive
benefits from programs paid out of
public funds and administered by the
Board and Department of Public Wel-
fare and admission to the eleemosy-
nary institutions of this State by
providing that the requirement of
United States citizenship shall be
waived as to any such person who
meets the other requirements speci-
fied in this act; providing severa-
bility and declaring an emergency.

"BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

"Section 1. Notwithstanding any other
provisions of statutes of this State, the
requirement that one be a citizen of the

United States to be eligible to receive assistance from the Board and Department of Public Welfare under Title 20A, Revised Civil Statutes of Texas, as amended, or to be admitted to any eleemosynary institutions of this state under Title 51, Revised Civil Statutes of Texas, as amended, shall be waived and be of no force and effect as to any person who has

"(a) Resided in this State for at least twenty (20) years; and has either

"(1) A child who has served in the Armed Forces of the United States; or

"(2) Paid ad valorem taxes on property in this State while a resident thereof for a period of ten (10) years."

Section 2. (Provides severability.)

Section 3. (Declares an emergency.)

We shall first consider the effect of Senate Bill 54 as it relates to eligibility of persons to receive public funds administered and paid by the Board and Department of Public Welfare. Under Title 20A, V.A.C.S., the various public assistance programs are set out, as are the eligibility requirements therefor. A consistent requirement is that the recipient must be a citizen of the United States. As we interpret Senate Bill 54, it would have the effect of removing or "waiving" the requirement that recipients be citizens of the United States, provided they can show themselves to come under Section 1, Subsection (a) of Senate Bill 54.

Section 51 of Article III of the Constitution of Texas reads in part as follows:

"Sec. 51. The Legislature shall have no power to make any grant or authorize the making of any grant of public moneys to any individual, association of individuals, municipal or other corporations whatsoever; . . ." (With certain exceptions.)

By way of additional exceptions, Section 51a of Article III provides in part as follows:

"Sec. 51a. The Legislature shall have the power, by General Laws, to provide, subject to limitations and restrictions herein contained, and such other limitations, restrictions and regulations as may by the Legislature be deemed expedient for assistance to, and for the payment of assistance to:

"(1) Needy aged persons who are actual bona fide citizens of Texas, and who are over the age of sixty-five (65) years; . . ." (with certain other requirements set forth). (Emphasis added.)

"(2) Needy blind persons who are actual bona fide citizens of Texas and are over the age of twenty-one (21) years; . . ." (with certain other requirements set forth). (Emphasis added.)

"(3) Needy children who are actual bona fide citizens of Texas and are under the age of sixteen (16) years; . . ." (with certain other requirements set forth). (Emphasis added.)

"The Legislature shall have the authority to accept from the Federal Government of the United States such financial aid for the assistance of the needy aged, needy blind, and needy children as such Government may offer not inconsistent with restrictions herein set forth; provided, however, that the amount of such assistance out of State funds to each person assisted shall never exceed the amount so expended out of Federal funds; . . ."

Section 51a-1, Article III of the Constitution of Texas reads in part as follows:

"The Legislature shall have the power to provide by General Laws and to make payment for same, under such limitations and restrictions as may be deemed by the Legislature expedient, for

direct or vendor payments for medical care
on behalf of needy recipients of Old Age
Assistance, Aid to the Blind, or Aid to
Dependent Children as provided for in Sec-
tion 51a of Article III and on behalf of
needy recipients of Aid to the Permanently
and Totally Disabled as provided for in
Section 51-b of Article III of the Consti-
tution of the State of Texas. The payments
for such medical care on behalf of such re-
cipients shall be in addition to the direct
assistance to such recipients, and shall be
in such amounts as provided by the Legisla-
ture; provided, however, that the amounts
paid out of State funds for such purposes
shall never exceed the amounts paid out of
Federal funds for such purposes.

"The Legislature shall have the au-
thority to accept from the Federal Govern-
ment of the United States, such financial
aid on behalf of the needy aged, needy blind,
needy children, and needy permanently and
totally disabled persons as such Government
may offer not inconsistent with restrictions
herein set forth." (Emphasis added.)

Section 51-b of Article III reads in part as fol-
lows:

"Sec. 51-b. The Legislature shall have
the power to provide by general laws, under
such limitations and restrictions as may be
deemed by the Legislature expedient, for as-
sistance to needy individuals, who are citi-
zens of the United States, who shall have
passed their eighteenth (18th) birthday but
have not passed their sixty-fifth (65th)
birthday, who are totally and permanently
disabled by reason of a mental or physical
handicap or a combination of physical and
mental handicaps and not feasible for voca-
tional rehabilitation, and who are residents
of the State of Texas, . . .

"The Legislature shall have the authori-
ty to accept from the Government of the United
States such financial aid for individuals who

are permanently and totally disabled as that
Government may offer not inconsistent with
the restrictions herein provided." (Emphasis
ours.)

Your attention is called to the fact that Section
51a provides that needy aged persons, needy blind persons,
and needy children must be "citizens of Texas" in order
to be eligible for the payments therein provided. Section
51a-1 provides for payments for medical care on behalf of
needy recipients of old age assistance, aid to the blind,
or aid to dependent children, as provided for in Sections
51a and 51-b, but restricts such payments to individuals
"who are citizens of the United States." It is seen that
in order for individuals to become eligible under the stated
exceptions to Section 51 of Article III, they must be "citi-
zens of Texas" or "citizens of the United States".

The funds provided by the various types of public
assistance payments are partially composed of federal funds.
In order for a recipient to be eligible, he must be eligible
under the State law, as well as under the federal law and
regulations. There is no requirement under the federal law
that the recipient must be a citizen of the United States.
It is merely provided that no State may have any citizenship
requirement which excludes "any citizen of the United States".
(See: 42 U.S. C.A. Sec. 302(b) (3) ).

Section 51 of Article III prohibits the making of any
such grant unless the recipient may bring himself within one
of the exceptions enumerated in Sections 51, 51a, 51a-1 or
51-b.

Section 51-b of Article III authorizes payments there-
under only to ". . . citizens of the United States". Clearly
any Act of the Legislature which attempted to "waive" or re-
move such requirement would violate that Section, as well as
Section 51 of Article III. Section 51a and Section 51a-1
only require the recipient thereunder to be citizens of Texas.
Senate Bill 54 would allow payments to be made to persons who,
under certain conditions are not citizens of the United States.
May a person be a citizen of Texas without being a citizen of
the United States?

2 Tex. Jur. 677, Aliens § 2, states, in part:

"... Generally speaking, a citizen is
one who is a member of a nation or sovereign

State, especially of a republic; one who owes
allegiance to a government, and is entitled
to protection from it. By the federal consti-
tution, 'All persons born or naturalized in
the United States, and subject to the juris-
diction thereof, are citizens of the United
States and of the State wherein they reside'.
Citizens are to be distinguished from resi-
dents; the terms are neither synonymous nor
interchangeable; while a citizen has the right
of residence, citizenship is not implied from
the fact of residence. Citizens are also dis-
tinguished from inhabitants -- who may be
strangers -- allowed to settle and remain in
a country. Aliens living in the state are
inhabitants."

2 Am. Jur. 464, Aliens § 2, states, in part:

"The term 'alien' is defined by statute
as comprehending any individual not a native-
born or naturalized citizen of the United
States. . . . .

"The term also includes subjects and
citizens of foreign countries, and not
merely persons resident in the United States
who owe allegiance elsewhere. Residence in
the United States is without effect to change
the status of a person as an alien; and it is
now settled that the term 'aliens' as used in
the Immigration Laws, includes not only 'alien
immigrants' but every alien, irrespective of
any previous residence or domicile in this
county."

The early case of Ex Parte Blumer, (Supreme Court)
27 Tex. 735 (1865), the Court considered who were residents
of the Confederate States for the purpose of conscription.
The Court said at page 737:

"/The7 Congress /of the Confederate
States/ designed that the term should include
more than citizens, native and naturalized,
otherwise the word citizen would have been
used . . ."

This certainly implies that a citizenship require-
ment is more restrictive than a mere residence requirement.

In Town of New Hartford v. Town of Canaan, 5 A. 360,
the Supreme Court of Errors of Connecticut, considered
whether the son of a naturalized citizen of the United
States acquired the status of a citizen of that State.  The
Court discussed the attributes of citizenship and said that:

>". . . The right of citizenship as dis-
>tinguished from alienage, is a national right,
>character, or condition, and does not pertain
>to the individual states, separately considered.
>. . ."

It is well settled that a person may be a citizen of
the United States without being a citizen of any particular
State.  (For example, a resident of the District of Colum-
bia, or the children of United States Ambassadors abroad);
but we have found only one case intimating the converse.

In McDonel v. State (Supreme Court Ind.) 90 Ind. 320
(1883), the Court said:

>"One may be a citizen of a State and yet
>not a citizen of the United States."

However, the Court goes on to say:

>". . . in most of the States of the Union
>persons who are not citizens of the United
>States are not admitted to State citizenship."

It is, therefore, our opinion that the provisions of
Senate Bill 54, which seek to waive the requirement that one
be a citizen of the United States to be eligible to receive
assistance from the Board and Department of Public Welfare
under Title 20 A, V.A.C.S., as amended, is prohibited by
Sections 51, 51a, 51a-1 and 51-b of Article III of the Con-
stitution of the State of Texas.  Section 51a of Article
III of the Constitution of Texas uses the term "citizens" of
Texas.  This Bill would allow persons to receive such funds
without being a citizen of Texas even though they reside in
the State of Texas and have resided in this county for a
period of twenty years or longer; and had a child who served
in the Armed Forces of the United States or paid ad valorem
taxes on property in this State while a resident for a period

of ten (10) years. These people are inhabitants of the State who have been allowed to settle and remain in this country and State. They are aliens and remain as such until they have been naturalized according to law. In our opinion, Senate Bill 54 violates Sections 51, 51a, 51a-1 and 51-b of Article III of the Constitution of Texas insofar as it purports to allow persons not citizens of Texas to receive public assistance payments.

Insofar as Senate Bill 54 relates to eligibility of persons who are not citizens of the United States for admission to any eleemosynary institution of this State under Title 51, V.A.C.S, as amended, we find no constitutional prerequisite setting forth who may be admitted to such institutions. In this connection see Attorney General's Opinion O-2223 (1940). Therefore, in our opinion it is within the discretion of the Legislature to prescribe the eligibility requirements for admission into the various eleemosynary institutions. Senate Bill 54 does not violate the Constitution of Texas insofar as it relates to admissions to such institutions. Reference is made to Attorney General's Opinion WW-251 (1957) which names the eleemosynary institutions of Texas.

We find no violations of the Constitution of Texas by Senate Bill 54 other than as set out above.

## SUMMARY

Senate Bill 54 of the 56th Legislature violates Sections 51, 51a, 51a-1 and 51-b of Article III of the Constitution of Texas insofar as it allows public assistance payments to persons not citizens of the United States, because United States citizenship is a prerequisite to being a citizen of Texas.

Senate Bill 54 of the 56th Legislature
is constitutional insofar as it relates
to admission requirements to the eleemo-
synary institutions.

Yours very truly,

WILL WILSON
Attorney General of Texas

By _Tom I. McFarling_

Tom I. McFarling
Assistant

By _Leon F. Pesek_

Leon F. Pesek
Assistant

TIM:zt:rm

APPROVED:

OPINION COMMITTEE

Geo. P. Blackburn, Chairman

Riley Eugene Fletcher
Charles D. Cabaniss
William R. Hemphill

REVIEWED FOR THE ATTORNEY GENERAL
BY: W. V. Geppert