BIGGS' ESTATE ET AL. *v.* HICKS

[No. 17,455.   Filed March 15, 1946.]

*Anderson, Hicks & Anderson,* of Gary, and *Hays & Hays,* of Scottsburg, for appellants.

*Albert Miranda,* of Jeffersonville, and *Leland West,* of Scottsburg, for appellee.

DRAPER, J.—The appellee filed her amended claim against the estate of Joseph Biggs, deceased, "for nursing care from February 26, 1940, to August 10, 1942—127 weeks and 4 days at $12.00 per week—$1,530.00." A separate denial and plea of payment was filed. The court awarded her $600. The administrator and the heirs prosecute this appeal, and predicate error upon the overruling of their motions for new trial, which motions question the sufficiency of the evidence and the legality of the decision, and allege that the court erred in overruling their motions to find against the appellee at the close of her case.

The evidence discloses that the appellee came to live at the Biggs' home in 1938. She married in June, 1939 and continued to live there with her husband under a verbal arrangement with the deceased whereby she and her husband lived in one part of the house and he in another. She did the cooking and some washing and

she and her husband shared the household expenses with him.

From the middle of February to the middle of March, 1940, and for several days in July, 1942, the deceased was bedfast and appellee did "bedside" nursing for him, giving him medicine and bathing and feeding him. The appellants insist there is no evidence that the appellee furnished him nursing care between the periods above mentioned, and they rely strongly upon the testimony of the doctor who attended him, and who testified in behalf of the appellee. The doctor testified to the care given to the deceased by the appellee during the two periods when he was bedfast, and also testified that at other times the appellee prepared his meals and took care of him "as a landlady and not as a nurse."

The doctor testified also that he saw the deceased frequently between February, 1940 and July, 1942, and during that period his arms, limbs and head shook and trembled; he had difficulty in controlling his motions; his mind was confused; and he talked and acted irrationally. Other witnesses who saw him during that period testified he was old and feeble; his mind wasn't right; his hands and limbs trembled and he sometimes required feeding. There is direct evidence that the appellee, at least on some occasions during that period, ministered to his wants and needs. From the whole evidence the court could logically conclude that he required and must have received nursing care during the entire period covered by the claim, and the evidence indicates that, with unimportant exceptions, there was no one who could have rendered that service except the appellee.

Whether the appellee actually performed nursing services for the deceased during the period in question

was a fact to be determined by the trial court. The conclusion of the doctor, from the facts and circumstances within his knowledge to which he testified, that the services rendered by the appellee were rendered as a landlady rather than as a nurse was not binding upon the trial court, whose right and duty it was to draw its own conclusions from the evidence.

The appellants contend that the parties were living together as one household and the services if rendered grew out of that situation; that under such circumstances there is a presumption that such services were gratuitously performed and proof of the rendition and acceptance thereof will not raise a promise to pay therefor, citing *Witt* v. *Witt, Executrix* (1938), 105 Ind. App. 415, 12 N. E. (2d) 1013.

The parties were not related by blood or marriage. Without by any means deciding that the relationship of the parties, or the circumstances under which they lived in the same house are sufficient to invoke the operation of the rule contended for, it is sufficient to say that appellee's case does not rest on any such inference or "presumption," for there is direct testimony to the effect that Biggs told his doctor, who was also his friend, that the appellee was performing services and that he had an understanding with her that she was to take care of him and he was to remunerate her.

The appellants contend that the value of the appellee's services was not proven. There is no evidence of an agreement fixing the rate of compensation for appellee's services, and so the reasonable value thereof is the measure of compensation to which the appellee is entitled. *The Union Mutual Life Insurance Company* v. *Buchanan* (1885), 100 Ind. 63. The evidence discloses that $12 per week was the prevailing wage paid for practical nursing in that city

at that time. This evidence amply supports the recovery here, which was at the rate of about $4.75 per week.

In that portion of their brief devoted to "Argument," the appellants insist they introduced evidence sufficient to prove that the deceased paid any amounts ██ owing by him to the appellee. The weight of such evidence was for the trier of the facts. Moreover, in their "Propositions, Points and Authorities" the question of payment, or any possible effect of any evidence thereof upon this case is not even mentioned. It is, therefore, waived under the rules of this court, which are binding alike upon the parties and the court. See Rule 2-17 (f), 1943 Revision.

Finding no error, the judgment is affirmed.

NOTE.—Reported in 65 N. E. (2d) 492.